## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE  DIVISION

Griffin, et al                                                  Civil Action No. 14-02998

versus                                                  Magistrate Judge Carol B. Whitehurst

Amerada Petroleum Corporation                        By Consent of the Parties
et al

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendants,

Exxon Mobil Corporation ("ExxonMobil") and Hess Corporation ("Hess")

(collectively referred to as "Defendants") [Rec. Doc. 53], Plaintiffs, Anthony Griffin

and Dorothy Joachain's, Memorandum in Opposition [Rec Doc. 71] and Defendant's

Reply thereto [Rec. Doc. 74]. For the reasons that follow, the Motion will be granted.

### I. Background

Plaintiffs filed this complaint seeking unpaid royalties that were allegedly owed

to their father, Morel Griffin,[1] pursuant to an oil, gas, and mineral lease that their

great-grandfather, Jack Griffin, and several other members of the Griffin family

granted on October 19, 1935, covering property located in Eola, Louisiana, in

Avoyelles Parish (the "Lease"). *R. 9, ¶¶ 2, 38; R. 9-1 (Lease)[2]; R. 53-2, Depo. Of*

---

[1] It is undisputed that Plaintiffs are the only children of Morel Griffin, *R. 71-1, Pls'
Uncontested Material Facts.*

[2] A copy of the Lease is attached to the Amended Complaint. *R. 9-1.*

*Griffin, 77:10-78:3; R. 53-3, Depo. of Joachain, 60:9-12.* Plaintiffs allege that production occurred on the leased property between 1940 and 1969, during which time several members of the Griffin family received royalty payments. *R. 9 at ¶¶ 14, 16, 17, 20, 38; R. 53-2 at 77:10-78:3; R. 53-3 at 60:9-12.* Plaintiffs further allege that their father, Morel Griffin, did not receive royalty payments. *R. 9, ¶ 20.*[3] Plaintiffs confirmed in their depositions that the only claims asserted against defendants in this litigation are for unpaid royalties that were allegedly owed to their father under the Lease. *R. 53-2, 77:10-78:3, R.53-3, 60:9-12.*

Defendants have produced affidavits and deposition transcripts to support their Motion For Summary Judgment in compliance with Federal Rule of Civil Procedure 56(c). *R. 53, Exhs. A-E.* In their Opposition to the Motion, Plaintiffs filed a "Statement of Uncontested Facts." *R. 71-1.* This Court's Local Rule 56.2 states "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Local Rule, LR56.2.* Here, Plaintiffs filed a list of three "Uncontested Facts," but filed no "separate, short and concise

---

[3] Griffin acknowledged in his deposition that the list of "Griffins" who received royalties payments were his father's brothers and sisters as well as cousins. *R. 53-2, 50:1-20.*

statement of the material facts as to which there exists a genuine issue to be tried."

*R. 71-1.* Thus, because the material facts set forth by Defendants have not been

controverted, there is no genuine issue of material fact as to Defendants'

"Uncontested Material Facts," *R. 53-7,* which state:

¶4. Hess' corporate predecessors are the only entities that held an interest in

the Lease at issue—ExxonMobil never held an interest—and any such interest [of

Hess] was released on March 5, 1954. *R. 53-4,* Affidavit of Bradley Broussard, ¶¶

5, 6.

¶5. Hess divested itself of all its right, title and interests in all Louisiana

onshore oil and gas producing assets as of April 1, 2006, and thus, as of April 1,

2006 at the latest, neither Hess nor any of its predecessors or subsidiaries held an

ownership interest or conducted operations in Avoyelles Parish. *R. 53-5,* Affidavit

of Carl Cody Moerer, ¶ 2(a)-(b).

¶6.  Neither ExxonMobil nor any of its predecessors or subsidiaries held an

ownership interest or conducted operations in Avoyelles Parish since the late

1990s. *R. 53-6,* Affidavit of Donald P. Brown*, ¶¶ 3-5.*

¶8. Morel Griffin died on March 5, 1976. *R. 53-2 at 11:25; R. 53-3 at*

*10:14.*

¶9. Plaintiffs' mother informed them in 1983 or 1984 that their father was

allegedly owed the royalty payments that are at issue in this lawsuit. *R. 53-2 at 37:25-38:15; R. 53-3 at 30:14-31:11.*

¶10. Dorothy Joachain relied on her brother to handle her claims at issue in this lawsuit. *R. 53-3 at 20:1-18.*

¶11. Between the years of 1983 and 1984, Anthony Griffin visited the Clerk of Court's office in Avoyelles Parish and the Department of Natural Resources in Baton Rouge and researched the oil wells located on the property from which his father could have been owed royalties. *R. 53-2 at 30:2-33:6.*

¶12. Around the same time, Griffin hired an attorney to represent him with respect to these claims. *Id. at 41:4-23.*

¶13. In the course of that representation, Mr. Griffin's attorney discovered an abstract of title that Mr. Griffin's uncle, Denell Griffin, had previously commissioned in connection with potential oil company operations on the property. *Id. at 40:2-42:14.*

¶14. Griffin then spoke with his Uncle Denell and another family member, Lorinda Forsythe, "in reference to our claim" and inquired as to the royalty payments that they received from the property. *Id. at 42:15-44:19.*

¶15. Forsythe provided Griffin with some documentation regarding her royalty payments, which included correspondence with Hess' predecessor-in-

interest and a copy of a check received from the oil company. *Id.*

¶16. Griffin additionally gathered documents from an attorney that formerly represented the Griffin family, including check stubs for royalty payments related to the property and numerous letters between the attorney and ExxonMobil's predecessors-in-interest regarding payments made—and owed—from the oil operations identified by Plaintiffs in this litigation. *Id. at 44:8-45:7, 69:16-73:9.*

¶17. Plaintiffs continued their investigation intermittently for two decades, and in 2008 Plaintiffs reached out to ExxonMobil directly regarding their unpaid royalty claims. *Id at 60:1-65:17; R. 53-3 at 46:10-49:9.*

¶18. With Joachain's full knowledge, Griffin and his wife sent a letter to Jane James at ExxonMobil, along with a packet containing several of the documents they had previously gathered (including information related to both ExxonMobil's and Hess' predecessors), requesting further information as to the royalty payments allegedly owed to their father. *R. 53-2 at 61:17-62:23, R. 53-3 at 46:10-47:4.*

¶19. Less than one month later, James participated in a telephone call with Griffin and his wife, which was immediately followed by a written letter explaining that: (1) ExxonMobil had no sales under the referenced lease after July 1954; (2) they found no outstanding royalty payments held in suspense for the

names provided in their royalty owner records; and (3) they searched their records

for the acreage described and found it not to be under lease to ExxonMobil. *R.53-2*

*at 62:24-64:22.*

¶20.  Griffin discussed  James' response with Joachain shortly after he

received this letter. *R. 53-3 at 44:23-45:23.*

¶21. Plaintiffs disagreed with James' response and filed this lawsuit on

October 10, 2014. *R.53-2 at 64:4-22*.

Plaintiffs filed this lawsuit on October 10, 2014.

*A. Contentions of the Parties*

Defendants contend that Plaintiffs' claims for unpaid royalties have

prescribed and are therefore time barred under Louisiana Civil Code article

3494(5) which expressly provides that the prescriptive period for a claim for

unpaid royalties is three (3) years. They assert that Plaintiffs' deposition testimony

"acknowledges, unequivocally" that they first became aware of their claims for the

unpaid royalties at issue between 1983 and 1984—thirty years before they

instituted this action on October 10, 2014.

Plaintiffs argue "there existed many circumstances that justify [Plaintiffs]

delay in filing this lawsuit." *R. 71.* They contend that between 1983 and 1984 they

merely "began the process of seeking out those who were responsible for the

payment of royalties" attributable to the Lease. They further contend that many members of their family were uneducated and that their father could not sign his name. Finally, Plaintiffs assert that there are currently twenty-two (22) wells located in the vicinity of the land under the Lease and prescription has not run from the "continuous production to the current date."

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir.1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for

trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The

nonmoving party must show more than "some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). In evaluating the evidence tendered by the parties, the Court

must accept the evidence of the nonmovant as credible and draw all justifiable

inferences in its favor. *Anderson*, 477 U.S. at 255.

### III. Analysis

In Louisiana, actions to recover under payments of royalties from the

production of minerals, such as Plaintiffs assert in this case, are limited by a three

year prescriptive period.  La. C.C. art. 3494(5). Article 3493(5) provides in

pertinent part:

 Art. 3494. Actions subject to a three-year prescription

The following actions are subject to a liberative prescription of three years:

*** 

(5) An action to recover underpayments or overpayments of royalties
from the production of minerals, provided that nothing herein applies
to any payments, rent, or royalties derived from state-owned
properties.

LA C.C. Art. 3494. Louisiana courts are unanimous in holding that any claim

seeking payment of additional royalties owed to a mineral lessor under a lease,

regardless of how styled, is subject to the three-year prescriptive period of La. Civ.

Code art. 3494.[4] The prescriptive period for an unpaid royalty claim generally

begins to run from each monthly royalty payment, or in cases involving unpaid

royalties, when the royalty payment was otherwise due.  *Frey v. Amoco Prod. Co.*,

943 F.2d 578 (5th Cir.1991), withdrawn in part on reh'g and question certified,

951 F.2d 67 (5th Cir.1992), certified question answered, 603 So.2d 166 (La.1992),

reinstated in part on reh'g, 976 F.2d 242 (5th Cir.1992); *Fite Oil & Gas, Inc. v.*

*SWEPI, L.P.*, 600 Fed.Appx. 239, 245 (5th Cir. 2015).

Prescriptive statutes are to be strictly construed against prescription and in

favor of the obligation sought to be extinguished. *Wimberly v. Gatch*, 635 So.2d

206 (La.1994). The defendant has the initial burden of proving that a claim has

prescribed, but if the defendant shows that three years have passed between the

tortious acts and the filing of the lawsuit, then the burden shifts to the plaintiff to

prove an exception to prescription.

One such exception is found in the doctrine of *contra non valentem*, which

prevents the commencement of the running of prescription when the plaintiff does

---

[4] Royalty owners cannot circumvent the three-year prescriptive period by characterizing their claims as "breach of contract," "breach of implied obligations," or some other type of claim that would otherwise be subject to a longer prescriptive period. *See*, *e.g.*, *Parker v. Ohio Oil Co.*, 186 So. 604, 610 (La. 1939) (suit for "accounting" of royalties subject to 3-year, not 10-year, prescription); *Acadia Holiness Association v. IMC Corp.*, 616 So.2d 855 (La. App. 3 Cir. 4/7/93) (rejecting plaintiff's characterization of suit for additional royalties as breach of contract claim in order to circumvent the 3-year prescriptive period of La. Civ. Code art. 3494).

not know nor reasonably should know of the cause of action. *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002). Although  not specifically stated, it appears from Plaintiffs' arguments that they rely on the doctrine of  *contra non valentem.*  Plaintiffs contend that their delay in filing this lawsuit was "justified" by "many circumstances" including that the family members with whom they discussed the Lease and the unpaid royalties in 1983 and 1984 were uneducated; and, their actions taken thereafter were merely "to seek[] out those who were responsible for the payment of royalties attributable to the [] Lease."

"Under the doctrine of *contra non valentem*, the prescription period does not run when the cause of action is not known or reasonably knowable by plaintiff, even though his ignorance was not induced by defendant. As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe this doctrine and only extend its benefits up to "the time that the plaintiff has actual or constructive knowledge of the tortious act. That is defined as the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000).

Suit need not be filed when there is a "mere apprehension that something might be wrong." *Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th

Cir.1992). Rather, there must be "[k]nowledge of the tortious act, [ ] damage caused by the tortious act, and the causal link between the act and the damage before one can be said to have constructive notice of one's causes of action." *Id*. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. *Carter v. Matrixx Initiatives, Inc.*, 391 Fed.Appx. 343, 345 (5th Cir. 2010) (citing *Jordan v. Employee Transfer Corp*., 509 So.2d 420, 423 (La.1987)).

Here, the undisputed facts  establish that Plaintiffs began investigating their claims of unpaid royalties in 1983 or 1984 after their mother told them about the family property and asked that they check into it. During this period Griffin visited the Clerk of Court's office in Avoyelles Parish and the Department of Natural Resources in Baton Rouge and researched the oil wells located on the property from which his father could have been owed royalties. In the "mid-1980's," Griffin continued the investigation by gathering documents identifying Defendants' corporate predecessors in connection with royalty payments made to various members of the Griffin's family. During this time Griffin retained an attorney to represent him with respect to these claims.  Griffin's attorney discovered an abstract of title that Griffin's uncle had previously commissioned in connection

with potential oil company operation on the family property. Griffin then spoke with his uncle and another family member as to the royalty payments that they received from the property.  He also gathered documents from an attorney that formerly represented the Griffin family, including check stubs for royalty payments related to the property and numerous letters between the attorney and ExxonMobil's corporate predecessors regarding payments made and owed from the oil operations at issue.

Ultimately, in 2008, over twenty years later, Plaintiffs submitted the documents they had previously gathered to ExxonMobil, requesting information related to the royalty payments allegedly due to their father. Plaintiffs subsequently received a telephone call and written letter from an ExxonMobil representative explaining that the Griffin family property was never under lease to ExxonMobil. Nonetheless, ExxonMobil searched its records and found no outstanding royalty payments for the name provided by Plaintiffs.

The doctrine of *contra non valentem* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. In light of the facts set forth above, the Court finds that Plaintiffs had constructive knowledge sufficient to commence prescription over three (3) years before they filed this lawsuit. By *at least* 2008, Plaintiffs had received the

assistance of an attorney and had collected information, both documentary and oral, sufficient to "excite attention and prompt further inquiry" as to the unpaid royalties allegedly owed to their father, Morel Griffin. Plaintiffs' action of filing this lawsuit in 2014, thirty years after they were advised of the potential claim at issue, was not reasonable.

Plaintiffs' contention that the alleged currently producing oil wells on the property are potentially material to their claims, is irrelevant as to Plaintiffs' claims in this lawsuit against Defendants, ExxonMobil and Hess. Defendants have demonstrated by undisputed facts that they have had no relationship to any production from the wells under the Lease for over 3 years. Those facts establish the only parties, besides the lessors, who ever owned an interest in the 1935 Lease was H.H. Lawson and Amerada Petroleum Corporation, Hess' corporate predecessor, and Amerada Petroleum Corporation released its interest in the Lease on March 4, 1954.  Hess, its predecessors and subsidiaries, no longer held any ownership interest or conducted any operations in Avoyelles Parish as of April 1, 2006.  As to Exxon Mobil Corporation: (1) neither Exxon Mobil Corporation nor any of its predecessors or subsidiaries held an ownership interest or conducted operations in Avoyelles Parish since at least December 1, 1999; (2) neither Exxon Corporation nor any of its predecessors or subsidiaries held an ownership interest

13

or conducted operations in Avoyelles Parish since at least 1980; and, (3) neither Mobil Corporation nor any of its predecessors or subsidiaries held an ownership interest or conducted operations in Avoyelles Parish since at least December 1, 1999. Plaintiffs have not and cannot assert any claim against Defendants for the alleged currently producing oil wells.

## *IV. Conclusion*

Based on the foregoing undisputed facts and the applicable  jurisprudence, the Court finds that Plaintiffs' claims under La. C.C. art. 3494(5) are prescribed. As there are no genuine issues of material fact supporting Plaintiffs' claims related to the applicability of *contra non valentem*, Defendants' Motion For Summary Judgment will be granted.

Signed February 17, 2017, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE